GOTT and others, executors, &c. *vs.* COOK and others.

KANE and wife *vs.* GOTT and others.

Where the testator, by his will, devised and bequeathed all his estate, except a house and lot in A. and his farm in M., to his executors to be sold and converted into money, and directed his executors to invest the proceeds thereof which were not required, to carry into effect the provisions of the will, and in like manner to invest the income of the estate, so as to make the whole estate active and yielding an income ; and bequeathed to the widow of his deceased brother, for the support of herself and her family, an annuity of $2000 during her life or widowhood, and made a further provision for the support of her two children, his nieces, until they should arrive at the age of twenty or be married if their mother should die or re-marry before that time ; and also bequeathed an annuity of $600 to his mother for life ; and directed his executors to pay to each of his two nieces, after they should respectively have arrived at the age of twenty or should be married, on their separate receipts notwithstanding their coverture, one equal half of the income of his estate during their respective lives ; and further directed, that in case of the death of either of his nieces after she should have attained the age of twenty years, without leaving lawful issue, the surviving niece should receive the whole income during her life, with remainder in fee to his mother in case both nieces should die without issue during her lifetime ; *Held,* that the nieces took immediate vested interests in their respective moieties of the income of the estate, for life, at the death of the testator, with a remainder to the survivor for life, in the moiety of each niece, in case of the death of the other without issue ; *Held also* that, upon the true construction of the will, the executors were to accumulate the moiety of the income belonging to each niece, for her exclusive benefit, until she should arrive at the age of twenty or should be married, and then to pay the same over to her, on her separate receipt, or to her legal representatives in case of her death ; and that after the nieces respectively had arrived at that age, or were married, the executors were to pay over to them their several shares of the income as it should accrue and be received by such executors ; *Held also,* that the trust to sell the property and invest the proceeds, and to accumulate the income and pay over the same to the nieces for their separate use notwithstanding coverture, was a valid trust, under the provisions of the revised statutes relative to uses and trusts.

The testator having further directed that in case of the death of either niece in the lifetime of the other, leaving issue, the children of the deceased niece should have her moiety of the income of the estate, after they had arrived at the age of twenty one if males and at the age of twenty if females, and that the executors should support and educate them out of such income in the meantime, and should also support their father out of the same if necessary ; and having also directed that in case of the death of both nieces, only

1839.

Gott
v.
Cook.

one of them leaving issue, that a similar disposition should be made of the whole income until the children of the niece who left issue should arrive at those ages, and then that the whole fund with the income thereof, should be transferred to such children ; *Held*, that these limitations to the children of the deceased niece, and to her surviving husband, in the events contemplated by the testator in his will might have the effect to suspend the absolute power of alienation for more than two lives in being at the death of the testator, and that those contingent limitations in the income of the estate were therefore void ; but that the ultimate limitation of the principal of the fund to the children after they should become of age was valid, as their right to the principal of the fund would vest in interest, at the furthest, at the death of the second niece.

The testator having also directed that in case of the death of both nieces leaving lawful issue, the whole trust fund, after providing for the payment of the annuities, should, upon the death of the surviving niece, be immediately divided by the executors among the children of the two nieces, one moiety to the children of each ; *Held* that this contingent limitation to the children of the testator's nieces was valid ; as it could not suspend the absolute power of alienation, or the absolute ownership of the fund, beyond the lives of the two nieces who were in being at the time of his death.

A devise in trust, to receive the rents and profits of real estate, or the income of personal estate, for the benefit of the cestui que trust, and to pay the same over to him when it is received, or to accumulate the same for his use during his minority and then to pay it over to him, is in its legal effect a trust to receive the rents and profits or income of the estate and to apply the same to his use. Such a trust is therefore valid under the several provisions of the revised statutes relative to uses and trusts and to the limitation of future or contingent interests in personal estate.

Where the testator by his will directs his real estate to be converted into personalty, and the proceeds thereof to be invested and disposed of as personal estate, for the purposes of his will, the court of chancery considers the real estate as converted into personalty, for the purpose of determining the validity of the several future or contingent interests in the fund which the testator has attempted to create by his will, and for the purpose of ascertaining whether the title to the fund is vested in the executors, as special trustees, and whether it belongs to the legatees to whom the beneficial interests therein are bequeathed.

A trust of personal estate may be created for any purpose which is not illegal, so far as relates to the mere vesting of the legal title to the property in the trustees. But all limitations of future or contingent interests in personal property, or interests in the future income thereof, are subject to the same rules and restrictions which are prescribed by the revised statutes in relation to similar interests in real estate.

In the case of a trust to receive the rents and profits or income of property, and to apply the same to the use of the cestu que trust, as authorized by the revised statutes, the cestui que trust, if he is perfectly competent to manage h's own affairs with discretion, has the right to direct how such rents and profits and income shall be applied for his use, after they have been actually received by the trustee ; although he cannot alien or make any other valid disposition of such rents and profits or income previous to that time. But

the court of chancery will protect the trustee, if he acts in good faith, in refusing to place the rents and profits or income of the trust fund in the hands of a cestui que trust who is improvident and will probably waste the same.

If the cestui que trust receives the rents and profits and income from the trustee, after the same have accrued and been collected by the trustee for his use, he cannot afterwards call upon the trustee to account for the money, if such cestui que trust was under no legal disability at the time he received the same.

The person who creates a trust, to receive the rents and profits or income of property for the use of another, may, in the creation of such trust, direct the manner in which the trustee shall apply the rents and profits or income to the use of the cestui que trust after the trustee has actually received the same.

An interest in the future income of personal estate, which income is to accrue and be received after the death of the testator, or after the execution of the deed creating such interest, is a future interest in personal property, and is subject to the same rules as a limitation of a future estate of the same nature in lands. And where the property is conveyed to a trustee, in trust to receive such income and apply it to the use of another, the absolute ownership of the personal property out of which such income is to arise is suspended during the continuance of the trust; as the interest of the cestui que trust therein is inalienable.

A trust to receive the rents and profits or income of property, and to accumulate the same for the benefit of an infant who is not in esse at the creation of the trust, must, in order to be valid, be so limited that the accumulation will commence and terminate within the compass of some two lives in being at the creation of the trust.

The power of alienation of real estate, or the absolute ownership of personal property, can only be suspended so long as there are no persons in being, and ascertained, by whom an absolute estate or interest in fee in possession in the property can be immediately conveyed. A future estate or interest in property may therefore be valid if it is so limited as to vest in interest, so as to be alienable, at the termination of two lives in being at the time of the creation thereof; although it will not vest in possession immediately upon the termination of such two lives.

Extra counsel fees to the guardian ad litem of infants who have only a contingent interest in the fund in litigation, cannot be allowed by the court, to be paid out of the fund which may eventually belong to other persons.

THE original bill in this cause was filed by the executors  May 7.
and trustees of the will of W. Cook, deceased, against his
heirs and next of kin, and the legatees named in his will, for
the purpose of settling the construction of the will and to
have the trust thereof, if valid, carried into effect under the
direction of this court.   Kane, the husband of one of the
heirs and legatees of the testator, and his wife by her next

friend, subsequently filed a cross bill, against the executors and trustees, for the purpose of obtaining a decree declaring various trusts and provisions in the will void, and for a distribution of the estate of the testator, not legally and effectually disposed of by the will, among his heirs and next of kin; to which cross bill the other parties to the original suit were also made defendants. The testator died unmarried, in July 1834, seized of some considerable real estate, and about $120,000 of personal property consisting principally of stocks, and of bonds and mortgages and other securities for money; leaving his mother Candace Cook, and his two nieces Sarah Cook and Jennet M. Cook, his heirs at law, and next of kin surviving him. Sarah, one of the nieces, afterwards married John I. Kane, by whom she had two children. Candace Cook, the mother of the decedent, died before the filing of the original bill, and her personal representative was made a party to the same and to the cross bill. By the will of the decedent, which was made a few months before his death, "in order to facilitate the management of his estate after his decease," he devised and bequeathed all his property to J. Gott, R. Marvin, and J. L. Schoolcraft, the executors named in his will, upon TRUST, to sell all the real estate, *except his house on the west side of Pearl street, in Albany, and his farm in Middlefield then occupied by L. Andrus and wife,* and to invest the proceeds not required to carry into effect any of the provisions thereafter expressed and contained in the will, and to invest the personal estate in the same manner, and in like manner to dispose of the *income* of the estate which was not required for the payment of any of the annuities mentioned in the will, so as to make his whole estate active and yielding an income, except the lot in Pearl street, and the farm in Middlefield. By the *fourth* clause of the will, he gave to Jennet Cook the widow of his deceased brother, the use of the house and lot in Pearl street, and of the furniture therein, during her life or widowhood. By the *fifth* clause, he gave her an annuity of $2,000, for the support of herself and family, during the same time, to be paid by his executors quarterly. And by the *sixth* clause, he gave to his mother an annuity of $600 for

life, to be paid in the same manner. By the *seventh* clause, in case of the death of his sister-in-law, or in case of her re-marriage, before his nieces should both have attained the age of twenty years or have married, he gave to the two nieces, and to the survivor of them, the use of the Pearl street house and lot and the furniture; and if either should be under the age of twenty, and not married, at the time of his sister-in-law's death or re-marriage, the executors were directed to pay the expense of the support, maintenance, and education of such niece or nieces until they had respectively finished their education; and after that, and until the age of twenty or marriage, to pay for their support a sum not exceeding $1,000 annually for each. And a further provision was inserted, for the residence of the testator's mother with the nieces in the Pearl street house, and for a female house-keeper; the expenses thereof to be paid by the executors. By the *eighth* clause of the will, the testator gave unto each niece after she was of the age of twenty or married, one equal half of the income of his estate after paying the annuities to his mother and sister-in-law, as such income should from time to time be received by the executors; which income was to be paid them by the executors upon their separate receipts, notwithstanding their coverture. And by the *ninth* clause, in case of the death of either of the nieces after having attained the age of twenty years, without leaving lawful issue, the testator directed his executors to pay to the surviving niece, the whole clear income of the estate subject to the annuities. And in case of the death of either leaving lawful issue, he gave to the children of the niece so dying the one-half of the income of his estate, after paying the annuities, and directed his executors to apply so much of that half as they should deem necessary, to the maintenance and education of such children, until they should arrive at the age of twenty-one if males, and twenty if females; and if the niece so dying should leave a husband, the testator authorized his executors, in their discretion, to apply a part of that half of the income of his estate to the support of such husband if he needed assistance. He also directed the surplus of that half to be accumulated by his executors; and that they should pay to the children respec-

1839.

Gott
v.
Cook.

tively, as they arrived at the ages aforesaid, their equal shares of such accumulated income. By the *tenth* clause, in case of the death of both nieces leaving issue, he gave to the children of each one equal half of his estate, in fee, subject to the annuities. And by the *eleventh* clause, in case of the death of both nieces, and only one of them should leave lawful issue, he gave the whole of the estate to such issue. And he directed and required his executors, if the child or children of the niece so leaving issue should be under the ages before mentioned, to apply so much of his estate as might be necessary for their support, maintenance and education, until the youngest should become of age; and to pay to such as should become of age during the minority of the youngest an equal share of the income of his estate, and then to assign and transfer unto such child or children all the money then on hand, and all the stocks and securities in which any part of the estate might then be invested; and to release to such child or children any real estate to which the executors might have acquired title in trust for the devisees, in the management of his estate, whether named or not. By the *twelfth* clause of the will, the ultimate remainder in fee was limited to the testator's mother in case both nieces died without issue in her lifetime. And by the *thirteenth* clause, the Middlefield farm was devised to the executors, in *trust for Eliza Andrus'* separate use for life, with remainder to her children in fee; which last mentioned devise was not in controversy here. The bill was taken as confessed against Jennet Cook, the widow of the testator's deceased brother, and against Dixon, the personal representative of the testator's mother. And the suit and cross suit were heard upon the bills and the answers of the several other parties therein; and upon the master's report, as to the facts, so far as they affected the rights of the parties who were infants.

*J. C. Spencer,* for the executors. The complainants' original bill was properly filed for an account, and there should be a reference to a master to take and state an account as prayed for by the original bill; and if any further duties are

to be performed by the executors, under the trusts of the will, an order for a periodical accounting, as prayed for in the original bill, should be entered.

The prayer of the original bill, for an account, necessarily involves the validity of most of the directions in the will respecting the payment over of monies by the executors and trustees.

The devise, by the 7th clause of the will, of the house and lot in Pearl street, after the death or marriage of Jennet Cook, to the nieces, Sarah C. Cook and Jennet M. Cook, or to the survivor of them who shall be living at her death or marriage, during their lives, does not suspend the power of alienation illegally. If both the nieces survive Jennet Cook, each takes one half during life, and there is then a suspension of each half only during two lives, and if one only survives, there is then a suspension of the entirety during two lives only. And if the construction of this devise is, that if one niece should die after having entered on the enjoyment of her life estate in one moiety there is a cross remainder to the survivor during life, then this last successive life estate is cut off by § 17 *of title* 2, *ch.* 1, *part* 2, of the revised statutes.

The directions in the 8th clause of the will, to pay the income of the testator's estate to Sarah C. Cook and Jennet M. Cook, after deducting the charges enumerated, is a good and valid trust to pay a legacy to them annually.

The directions in the eleventh clause of the will do not suspend the power of alienation, or the absolute ownership of the property, beyond the suspension already created by the 8th clause. The legacies given by the eleventh clause, are vested at once, in the issue of the niece leaving children, upon the death of the surviving niece. The directions to apply the income to the support of such issue until they attain their lawful age, and then to pay over the principal, do not affect the vested interest of such issue, or in any way suspend the absolute ownership of the principal. (5 *Ves.* 509. 3 *Brown, Ch.* 408. 3 *Mylne & K.* 257. 2 *Sim. & Stu.* 505. 1 *Con. Ch.* 562.) At all events, the directions in the eleventh clause are wholly independent of, and do not affect the bequests in the tenth clause, or any other clause. If there is

an implied direction in the eleventh clause for an accumulation, it is directed to commence subsequent to the death of the testator, at the termination of two lives in being at the time of his death, and during the minorities of the persons for whose benefit it is intended, and is to terminate at the expiration of their minorities. It is therefore valid. (1 *Mad. Ch.* 256. 2 *Swans.* 432.) But even if there be directions for accumulation which are invalid, they do not affect the devise of the principal of the estate.

The devise of the farm in Middlefield to Eliza Andrus for life, with remainder to her surviving children, cannot be questioned in the argument, because she is not a party to this suit.

From the time of the death of the testator to the time of the marriage of the nieces, or of their attaining the age of twenty years, there may be an accumulation the principal of which is devised to unborn issue of the nieces, or to Candace Cook, neither of them being minors in being. This direction for accumulation is therefore void; but the only consequence is, that the surplus either goes to the nieces, as the persons entitled to the next eventual estate, or it is undisposed of and goes to the next of kin, who are the nieces; and the executors should be directed to account accordingly for such surplus.

The annuity to Jennet Cook is admitted by the cross bill to be valid. Even if it may now be questioned, still it is valid, as it is payable out of the principal of the estate and therefore does not suspend the power of alienation.

The directions in the ninth clause of the will, for the accumulation of the surplus of one half of the income of the testator's estate, during the minority of the issue of a niece dying and leaving the other niece surviving, is not questioned by the pleadings, and is valid. It is like the directions in the eleventh clause. And the direction to pay a part of the one half of the income, in such case, to a husband who survives such deceased niece, is also valid.

*James King*, for Kane and wife. The provisions of the revised statutes are violated by the directions in the will,

suspending the absolute power of alienation for more than two lives in being. The absolute power of alienation is suspended for more than two lives in being in the devise of the Pearl-street house and lot. The testator, by the third section of the will, gives, devises and bequeaths his whole estate, both real and personal, to his executors in trust, and then by the fourth section of the will, gives and bequeaths a contingent life estate of Mrs. Jennet Cook in the house and lot in Pearl-street, and afterwards a life estate to his two nieces during their joint lives. The absolute power of alienation is suspended for more than two lives in being in the whole estate, by giving, in the seventh and eighth sections of the will, a life estate in the income to his two nieces, and then by the ninth, tenth and eleventh sections, farther suspending the power of disposition during the several minorities of the children of his two nieces, who were not in being at the time of the death of the testator when the estate was created. The court cannot give effect to the estate in remainder upon the death of the testator's two nieces, because the trust estate is further prolonged by the minority of the youngest child of his two nieces, who was not named in the will, nor was in being at the creation of the estate. It appears by the pleadings that William Henry Kane, a son of the testator's niece Sarah, was born on the 26th day of September, 1835, after the testator's death, and was not, and could not be named in the will as one of the children during whose minority the trust estate was intended to endure. The will does not specify any two lives, during which the power of alienation was to be suspended; but it may, by the will, be suspended during the lives of Mrs. Jennet Cook and her daughters, and the minorities of their unborn children.

The provisions of the will violate the revised statutes by creating a trust estate for objects and purposes not authorized. There is no authority for the creation of a trust for the sale of real estate for the purposes declared in the will. There is no authority for the creation of a trust estate, in which the trustees can only stand seized of the title of the Pearl-street house and lot, when the use and oc-

cupation is directly given by the testator to Mrs. Jennet Cook, during her life, or while she remains a widow, without any control or discretion of the trustees to be exercised over the same. There is no authority for the creation of a trust estate for the mere purpose of authorizing the trustees to receive the income and pay the same over to the testator's nieces. A trust to receive the income of an estate, and pay over the same, or apply it to the use of children unborn at the time the trust estate is created, cannot be sustained under the revised statutes. The purpose of paying an annuity is not an object within the purview of the revised statutes that can sustain a trust estate. The mere duty of distributing the estate as directed under the eleventh section of the will, is not a sufficient object to sustain an express trust ; and especially as that service is confined to the sole purpose of distribution, without the exercise of discretion or judgment on the part of the trustees. The trust estate cannot be sustained under the third subdivision of the 55th section of the second article of title two of the revised statutes relative to uses and trusts, because the estate created is not made subject to the rules prescribed in the first article of that title.

If the trusts created by the will are not good as express trusts, neither are they good as powers in trust. Although the testator professedly gives, devises and bequeaths all his estate, both real and personal, yet in all the contingencies which he anticipates by a change of parties, from death or otherwise, he gives and bequeaths or devises his estate, both real and personal, or a share thereof, directly to the person he wishes to become invested with such share of his estate upon the happening of the contingency. He does not direct his trustees to convey except in one case, but he bequeaths it, or devises it himself. As powers in trust are charges upon all lands of the testator, they necessarily suspend the power of alienation while they remain unexecuted, and are, therefore, subject to the same objection, on the ground of the suspension of the power of alienation, as the illegal limitation of any other estate. There is not one direction or duty prescribed by the testator in his will, for his

trustees to observe or perform, which can be performed under a power in trust. To release real estate, as the trustees are directed to do in the eleventh section of the will can only be done in the execution of a trust.

The directions to accumulate the surplus income of the testator's estate for the unborn child or children of his two nieces are void, because the accumulation of the surplus income is not directed to commence within the time limited by the revised statutes for the vesting of future estates.

The greater part of the provisions of the will are not only unauthorized by the revised statutes, but are in direct hostility to the provisions thereof. It will, therefore, be the duty of this court to declare the whole trust estate void ; and after making provision for the surviving annuitant, Mrs. Cook, to decree that the executors shall settle their accounts before a master, in this court, and that the personal property shall be distributed among the next of kin of the testator. And also to declare that all the real estate of the testator descended to his heirs at law, subject to a life estate in his mother, Candace Cook, except the Otsego farm, in which Eliza Andrus takes a life estate, and her children an estate in remainder ; and except also the Pearl-street house and lot in which Mrs. Jennet Cook takes a contingent life estate, by an express bequest from the testator, with remainder in fee to the two nieces of the testator.

*S. Stevens*, for the infant defendants, Jennet M. Cook and the children of Kane and wife. The devise, by the 7th clause of the will, of the house and lot in Pearl-street, after the death or marriage of Jennet Cook, to the nieces Sarah C. Cook and Jennet M. Cook, or to the survivor of them who shall be living at the death or marriage of Jennet Cook, during their lives, does not suspend the power of alienation for more than two lives in being at the death of the testator. The nieces do not take the estate in remainder in that house and lot as joint tenants, in case both survive Jennet Cook, but each takes one half during her own life. In that event, there is a suspension as to each half, during two lives only. (1 *R. S.* 727, § 44.) And if only one of the nieces survives the death

or marriage of Jennet Cook, then there is a suspension of the entirety for two lives only. The life estate limited to the survivor of the two nieces in case only one survives Jennet Cook, is an alternative life estate. The first estate in order is the life estate in each niece of one half, if both survive. But in case the life estate of either niece in a moiety should fail to vest, then a life estate in the surviving niece, in the same one half, is substituted for it. Should the construction of this devise be that in case both nieces should survive their mother Jennet Cook, and one should die after their respective life estates in a moiety had vested in possession, then there is a cross-remainder to the survivor for life; such cross-remainder would be a life estate beyond two successive lives. And being void by the statute, the ultimate remainder in fee in such moiety would immediately vest in possession, at the expiration of the second life estate therein. (1 R. S. 723, § 17.)

The directions in the 11th clause of the will do not suspend the power of alienation, or the absolute ownership of property, beyond the suspension already created by the 8th clause. So far as it regards the house and lot in Pearl-street, the legal effect of the direction in the 11th clause is the same as the 8th. If both nieces survive their mother, each takes a life estate in a moiety; if one should die after the vesting in possession of her life estate in her moiety, the cross-remainder for life to the surviving niece is cut off by the statute, so that the remainder in fee in such moiety will vest in possession at the expiration of the first two life estates, to wit, Jennet Cook, who takes the whole for life, and the niece who takes a moiety for life after the death of Jennet; and if but one niece survive Jennet Cook, such niece takes a life estate in the whole—her life being substituted for that of her sister as to the moiety which would have gone to her sister had she survived Jennet Cook; and in that event upon the death of the surviving niece and Jennet Cook, the remainder in fee in the whole vests in possession. If there is any other real estate which would pass under the 11th clause, only two life estates are carved out of it, to wit, the life estate of the two nieces; so that in

no event is the power of alienation suspended for more than two lives in being at the death of the testator. The legacies given by the 11th clause are vested at once in the issue of the niece leaving children, on the death of the surviving niece. The lives of the two nieces only, precede the vesting of the legacy given by the 11th clause. The directions to apply the income to the support of such issue until they attain their lawful age, and then to pay over the principal, do not affect the vested interest of such issue, or in any way suspend their absolute ownership of the principal.

But whatever may be the construction of the 11th clause, it is wholly independent of and does not affect the devises or bequests in any other clause of the will.

The direction in the 8th clause of the will to pay the income of the testator's estate to his two nieces, after deducting the charges enumerated, is valid. It is a valid trust to pay a gross sum or legacy annually to them. And it is a legal and valid way or manner of bequeathing a life estate in personal property, and is not prohibited by the statute.

The accumulation which may take place, by the 7th clause of the will, between the death of the testator and the marriage of the nieces, or their attaining the age of 20 years, will commence at the death of the testator; will be for the benefit of the two nieces who were minors then in being; and will cease at or before the expiration of their minority. It is therefore valid. (1 *R. S.* 726, § 37. *Id.* 773, § 3, *subd.* 1.)

But if such accumulation should be deemed to be for the benefit of the unborn issue of the nieces, or Candice Cook, and therefore void, neither being infants in being at the time the accumulation is directed to commence, then the surplus either goes to those entitled as the presumptive owners of the next eventual estate, the nieces, or it is undisposed of and goes to the next of kin, who are the nieces, the mother being now dead.

If there is an implied direction in the 11th clause of the will for an accumulation, it is directed to commence subsequent to the death of the testator, at the termination of two lives in being at his death, and during the minority of the

1839.

Gott
v.
Cook.

persons for whose benefit it is intended. And as it is to terminate at the expiration of their minority, it is valid. (1 R. S. 726, § 37, *subd.* 2. *Id.* 774, § 3, *subd.* 2.)

THE CHANCELLOR. It is conceded by the counsel for all parties in this case, that the executors, as trustees, took no estate or interest whatever in the house and lot on Pearl-street or in the Middlefield farm ; but that the whole beneficial interests devised, so far as the devise was legal, passed directly to the cestuis que trust, as legal estates, under the provisions of the forty-seventh section of the article of the revised statutes relative to uses and trusts. (1 *R. S.* 727.) It is only necessary, therefore, to examine the provisions of this will in relation to the other property of the testator ; all of which was intended to be devised and bequeathed to the executors, in trust, and to be converted into personal estate for the purposes of the will. And as this court, upon the principle of equitable conversion, considers a direction to convert one species of property into another, for purposes which are valid in law, as tantamount to an actual conversion thereof, the whole trust fund in this case must be considered as personal estate for the purpose of ascertaining whether the several bequests of future or contingent interests therein are valid ; whether the title to the property is vested in the executors, as special trustees, or it belongs to the several legatees to whom the beneficial interests therein are bequeathed. (*Grieveson* v. *Kusopp,* 2 *Keen's Rep.* 653. *Du Hourmelin* v. *Sheldon,* 1 *Beavan's Rep.* 79.)

The revised statutes have not attempted to define the objects for which express trusts of personal estate may be created ; as they have done in relation to trusts of real estate. Such trusts therefore may be created for any purposes which are not illegal. Indeed it would be very difficult, if not impossible, in many cases, to create and preserve future and contingent interests in personal property without the intervention of a trustee ; although trustees would not be necessary, under the provisions of the revised statutes, to create and preserve such future and contingent interests in lands or other real estate. In all other respects, however, except

1839.

Gott
v.
Cook.

as to the mere vesting of the legal title to the property in the trustee, instead of the cestui que trust, the conveyance or bequest of personal estate must be governed by the same rules which are applicable to a grant or devise of a similar interest in lands or real property. Independent of the common law principle of analogy between estates or interests in real and personal property, the statute creates such an analogy, by restricting the power of suspending the absolute ownership or the right of alienation, within the same limits; by confining the power of accumulating the income of personal estate, and the rents and profits of real estate, to the same objects and within the same bounds; and finally by declaring, in general terms, that in all other respects limitations of future or contingent interests in personal property shall be subject to the rules prescribed by the revised statutes in relation to future interests in lands. (1 *R. S.* 761, *tit.* 4.) It becomes necessary, therefore, to examine the several estates or future interests in this personal fund, and in the income thereof, which are attempted to be created or limited by this will; for the purpose of seeing whether all or any of them are void by these statutory regulations.

The annuities, to the sister in law and the mother of the testator, are not made payable out of the income of the estate merely, but are a charge upon the principal of the fund. They may therefore be provided for at once, by the purchase of annuities with a portion of the fund. And as the annuities in the present case are not inalienable under the sixty-third section of the article of the revised statutes relative to uses and trusts, which section is confined to beneficial interests in the *rents and profits or income* of the property, they do not suspend the absolute ownership as to any part of the fund. The provision for the support of the two nieces, and the additional allowance to the mother of the testator while she lives with them, do not appear to conflict with any rule of the revised statutes; for if the absolute ownership of the property is suspended thereby, it is necessarily limited to two lives in being at the death of the testator; to wit, the lives of the two nieces.

Upon the argument of this case I was under the impression that there was a part of the income of the estate, between the death of the testator and the coming of age or marriage of the nieces respectively, which was not disposed of by the will. On examining the third clause in connection with the eighth, however, I am satisfied it was the intention of the testator that one half of the income should be accumulated, by the executors, for the benefit of each niece, to be paid to her on her marriage or on her arriving at the age of twenty. The eighth clause appears to have been intended to direct the accumulated income of the fund to be paid to each, at the time prescribed, and that one half of the future income should then be paid over to each during her life. (*See Barber* v. *Barber*, 3 *Myln. & Craig*, 688.) These accumulations being for the benefit of infants who were in esse at the death of the testator, and being limited so that they must terminate during the minority of the infants respectively, are expressly authorized by the revised statutes, and are valid. (1 *R. S.* 729, § 55, *sub.* 4. *Idem*, 773, § 3.) The devise or bequest of one half of the income to each niece for life, after the trust of accumulation ceases, is a future interest in personal property within the statutory definition of future estates. (1 *R. S.* 723, § 10 ; 725, § 36.) The limitation of such interests must, therefore, be subject to the statutory rules in relation to future estates in lands. One of those rules is that the persons beneficially interested in the trust to receive such income cannot assign or in any manner dispose of such interests during their lives. (1 *R. S.* 730, § 63.) The absolute ownership of the fund or estate out of which this income is to arise is therefore suspended, by the limitation of such interests, during the lives of the two nieces. But as those two lives were in being at the death of the testator, this suspense of the absolute ownership, or the power of alienating the principal fund, does not exceed the limit allowed by law.

The trust in this case is to pay over the income to the nieces respectively, as the same shall be received by the executors, and is not, in terms, *to apply it to their use ;* which last is the language used in the 3d subdivision of the

1839.

Gott
v.
Cook.

55th section of the article relative to uses and trusts. And if that section of the revised statutes applies to trusts of personal property, so that no trust of personal estate is valid except such as are in conformity to the provisions thereof, the question arises whether such a trust as this is void. Upon that question there were differences of opinion expressed by some of the judges, in the court for the correction of errors, in the cases of *Lorillard's* and of *James'* wills. For the purpose of seeing whether such a trust comes within the principle of the 55th section, it is necessary to ascertain the intention of the legislature in framing the third subdivision of that section, as it was finally amended. The object unquestionably was to authorize a trust in the rents and profits of real estate for the benefit of an improvident beneficiary, so as to ensure him a support notwithstanding such improvidence; or a trust which would protect an unfortunate feme covert against the improvidence of her husband, so as to place what was intended for her beyond his reach, and beyond the reach of his creditors. And if this can be as effectually done under such a provision as is contained in this will as it could be, consistently with other provisions of the statute, if the trust was framed in the very words of the law, courts should not give to the statute a construction which would render it necessary for the trustee to purchase every loaf of bread, and every paper of pins, which may be required for the use of the cestuis que trust, instead of giving them the money, after the same has been received from the rents and profits of the trust estate, to enable them to purchase for themselves. Even as this section originally stood, when the rents and profits were to be applied only to the education and support of the cestui que trust, I have no doubt that the trustee would have been authorized to pay over the rents and profits to an adult cestui que trust, for that purpose, when received. The legislature, however, soon discovered that a cestui que trust might have other uses for money besides a bare education and maintenance; and that if the trustee could not give it to him, to be so applied, when it was more than sufficient for maintenance and education, the trust as to the surplus must fail; the trustee having no right to keep

1839.

Gott
v.
Cook.

the surplus himself, and the legislature having prohibited trusts of accumulation except in cases of minority. The statute, therefore, was amended so as to authorize the rents and profits to be applied generally *to the use* of the cestui que trust. The great object of the statute is attained if the property, by means of the trust, is placed beyond the reach of those who might squander the rents and profits in anticipation, or might allow the property to be taken for the payment of previous debts; and this is effectually done by the section of the revised statutes which renders the interest of the cestui que trust inalienable. The cestui que trust, if he is in a situation to know and provide for his own wants with ordinary discretion, must certainly have the power to direct how the money shall be applied when it has been actually received by the trustee; for it never could be tolerated, in such a case, that the trustee should have the power to direct what food the cestui que trust should eat, what clothes he should wear, what church he should attend and contribute to the support of, or to what other specific purpose his surplus income should be applied. In case the trustee should attempt, without any justifiable cause, to exercise such a control over the income of the trust fund, after it had been received so as to become the absolute property of the person for whose use it was to be applied, it would be the duty of this court to remove such trustee, and appoint another who better understood his duty. On the other hand it would equally be a breach of his duty to place the income, after it was received, in the hands of a lunatic or a drunkard, who he had reason to suppose would waste it without applying it to any beneficial use; and so it would be if he purchased articles of food and clothing or other property himself, and placed them in the hands of such a person, when he had reason to believe they would be wasted, instead of being used for the benefit of such cestui que trust or his family. In every such trust, whether the trustee is directed to pay over the rents and profits, as received, in money, or in necessaries to be purchased by himself, a certain degree of discretionary power must be vested in the trustee. And if that discretion is properly exercised by him, the rents and profits or

1839.

Gott
v.
Cook.

income, received from time to time, will be applied to the use of the cestui que trust, whether the same are delivered to him in money or in necessaries for himself and family. Where the trustee acts in good faith, and for the apparent benefit of the cestui que trust, in refusing to place the rents and profits or income in his hands to be wasted, the court of chancery will protect him in the honest discharge of his duty, by refusing its aid to the improvident cestui que trust. And if the income is paid over to the cestui que trust who is under no legal disability to receive it, after it has actually accrued and not by way of anticipation merely, even where the trust is in the words of the statute, he can never afterwards call upon the trustee to account for the money on the ground that it has been misapplied. The statute having authorized a trust to receive the rents and profits and apply them to the use of the cestui que trust, if the person creating the trust thinks proper to direct the manner of the application, as in this case, by paying them over to the objects of his bounty to be used in such way as they think proper notwithstanding their coverture, I cannot see why the direction is not within the letter as well as within the intent and meaning of the statutory provision on this subject. I therefore concur in opinion with those who hold that a valid trust may be created, to receive the rents and profits of real estate, and to apply them to the use of the cestui que trust by paying the same over to him in money, after they have accrued and been received by the trustee.

The interest in the income of the property in this case, after the death of either of the nieces without issue, is limited to the survivor for life, by the ninth clause of the will. By this provision cross remainders, in the moieties of the income before given to them respectively, are limited upon the previous estate or interests therein. The statute allows two successive estates for life, and this provision is therefore valid. But the provision in the same clause, giving to the children of the niece who dies first an interest in the income of their mother's share, during the minority of the youngest child, and giving to the widowed husband a conditional support out of such income,

1839.

Gott
v.
Cook.

appears to have the effect of suspending the absolute own-
ership of the property for more than two lives in being at
the death of the testator; as the bequest is not so limited
that the interests in this part of the income must necessarily
terminate during the life of the surviving niece. Even if
the provision in the tenth clause could be considered as lim-
iting the continuance of this interest to the time of the death
of the surviving niece, in the event of her leaving issue, that
would not obviate the objection; for the surviving niece
may die without issue, and in that event the interest at-
tempted to be created by the ninth clause, in favor of the
husband and children of the one who died first, is so limited
as to continue until the termination of the minority of the
youngest of those children. And the decision of the court
for the correction of errors in *Hawley* v. *James*, (16 *Wend.
Rep.* 61,) settles the construction of the fifteenth section of
the article of the revised statutes relative to the creation and
division of estates to be, that an estate is void in its creation
if it is so limited that it can by any possibility continue be-
yond the two lives in being at the creation of the estate.
This provision of the will is therefore void. And if the·
event contemplated by the testator in that part of the will
should happen, the interest or income of that half of the
trust fund will belong to the heirs at law and next of kin
of the testator, during the life of the surviving niece, as an
interest in the property not legally disposed of by the will.

By the tenth clause of the will the absolute ownership of
the fund, upon the death of both nieces leaving issue, is giv-
en directly to their children; one moiety to be divided
among the children of each. This is an estate in fee, limit-
ed upon the termination of two specified lives in being at the
death of the testator; and cannot by any possibility sus-
pend the power of alienation, or the absolute ownership of
the estate, beyond the limits allowed by the revised statutes.
It is therefore valid. And in the event contemplated by the
testator in this clause of the will, the executors must pay
over to the children of the two nieces the whole principal of
the fund, after providing for the annuity to Jennet Cook,
the widow of the testator's brother, if she is then living.

The eleventh clause provides for the contingency of the death of one of the nieces, leaving issue, after the death of the other without issue ; and also for the final distribution of the principal of the trust fund after the death of the surviving niece, without issue, subsequent to the happening of the event contemplated by the testator in the latter branch of the ninth clause of the will. If the absolute ownership and power of alienating the trust fund was, by this eleventh clause of the will, to vest in the children of the niece who had left issue, immediately upon the termination of the life estate of the surviving niece, as is provided by the tenth clause in the event of both nieces leaving issue, the limitation would be valid ; for the reasons stated in relation to the interest created in and by such tenth clause. But inasmuch as the absolute ownership of the fund, in either of the events contemplated by the eleventh clause, will have been suspended for the lives of the two nieces, it is evident that the suspense of the absolute ownership of the property, and of the power of alienation, cannot be continued after that time by any limitation or condition whatever. For the reasons stated in relation to a similar provision in the ninth clause of the will, the trust to receive the rents and profits during the minority of the youngest child, and to pay over the shares of the adults, and to accumulate the shares of the infants during their respective minorities, is the limitation of a future estate or interest in this fund ; which limitation is void in its creation. (1 *R. S.* 723, § 14.) A trust to accumulate rents and profits for the benefit of an infant who was not in esse at the creation of the trust, in order to be valid, must be so limited that the accumulation will commence and terminate within the compass of some two ascertained lives in being at the creation of the trust.

It is insisted however, by the counsel for the executors and for the infant defendants, that if the interest created in the income of the estate during the minority of the youngest child, by this clause of the will, is void, the ultimate remainder in fee to the ceildren is thereby accelerated ; so as to give them the absolute ownership and the right to the possession of the fund immediately upon the death of the sur-

viving niece. This case certainly is not provided for by the 17th section of the article relative to the creation and division of estates. (1 *R. S.* 723.) That section only provided for the acceleration of a remainder which is limited upon more than two successive estates *for life* to persons in being at the creation of the estate. Here the ultimate remainder, in the events contemplated in this clause of the will, is neither limited upon successive estates for life, nor upon the termination of the minority of a person in esse at the time of the creation of the estate. The trust term in the income of the estate, after the death of both nieces and during the minority of the youngest child, being void, the income during that period cannot be given to the children, as the persons presumptively entitled to the next eventual estate, under the provisions of the fortieth section of the last mentioned article of the revised statutes. (1 *R. S.* 726.) That section gives the intermediate rents and profits or income to the person presumptively entitled to the next eventual estate, where the limitation of the future estate suspends the absolute ownership of the property or the power of alienation. Here the ultimate remainder in fee, or the direction to distribute the whole of the principal of the fund, among the children of the niece who left issue, when the youngest of her children arrives at the age prescribed, will be a vested interest in all the children at the death of the surviving niece ; so that the power of alienation or the absolute ownership will be no longer suspended ; the trust term, and the direction to accumulate during the minority of the youngest child, being void in its creation. It is true, the children of the niece who died leaving issue will not be entitled to their ultimate remainders, in possession, until the end of the term attempted to be given to the executors during the minority of such youngest child ; as the heirs and next of kin of the testator will be entitled to the income in the mean time, as an interest in the property not effectually disposed of by the will.(*a*)

---

(*a*) Where there is an interest in a fund arising from the proceeds of the sales of both real and personal estate, which interest is not legally and effectually disposed of by the will, so much of that interest as arises from the pro-

But such children, or their legal guardians, by joining with the heirs and next of kin, can at once convey an absolute ownership or fee in the whole fund the moment their remainder vests in interest. The power of alienation of real property, or the absolute ownership of personal property, which is the same thing in substance, can only be suspended while there are persons in being and ascertained, by whom an absolute estate or interest in fee in possession can be immediately conveyed. (1 *R. S.* 723, § 14.) I conclude, therefore, that although the trust term to receive the rents and profits for the benefit of the children during their minority is void, the ultimate remainder in fee to the children, which is limited on that term, is not accelerated, neither is it invalid. This ultimate remainder in fee, in the events contemplated in the eleventh clause of the will, is expressly authorized by the twenty-fourth section of the article of the revised statutes relative to the creation and division of estates, so often referred to. (1 *R. S.* 724.) It is in substance a contingent remainder limited upon a term of years, within the meaning of the twentieth section. But it is valid according to that section, as it is so limited that it must vest in interest, if ever, on the determination of two lives in being at the creation of such remainder; to wit, the lives of the two nieces of the testator. And as it does not suspend the power of alienation or the absolute ownership of the property, as I have before shown, it does not come in conflict with the provisions of the fifteenth section; although the estate does not vest in possession as soon as it vests in interest.

A decree must be entered declaring the construction of the will accordingly, and containing the proper directions to the executors in the several events contemplated by the will. It must also be referred to the injunction or taxing master of the third circuit to state the accounts of the executors; and to ascertain what is due to Mrs. Kane, as well for the accu-

1839.

Gott
v.
Cook.

---

ceeds of the real estate belongs to the heir at law, and so much as arises from the personalty belongs to the residuary legatees or next of kin. (*Eyre v. Marsden*, 2 *Keen's Rep.* 564.)

mulation of her half of the income previous to her marriage, as for the receipts thereof afterwards ; and also to ascertain the accumulated fund, arising from the half of the income of the fund which is to be accumulated for the benefit of the infant defendant Jennet M. Cook until she marries or arrives at the age of twenty years. The decree must also contain a provision for a periodical passing of the accounts of the executors, during the continuance of the trust, before the same master if in office, and if not, then by his successor as injunction or taxing master. The costs of all parties must be paid out of the capital of the estate. And a reasonable counsel fee, to the guardian ad litem and counsel of Jennet M. Cook, to be certified by the master, may be paid to him by the executors out of the accumulated fund belonging to her. The infant children of Mrs. Kane, having no vested interest in the estate, there is nothing out of which any counsel fees for them can be allowed. And the court is not authorized to charge a fund which may eventually all belong to others, with any thing more than the taxable costs of their guardians ad litem.