Wright, J.,
dissenting (after stating facts). The sole question is whether the disposition of the residue of the testator’s estate ‘ is or is not void for remoteness. Our statutes declare, in respect to real estate, that “ the absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuancé of not more than two lives in being at the creation of the estate” (1 E. S. 728 § 15); and in *98 respect to personal, that “the absolute ownership of personal property shall nof be suspended by any limitation or condition whatever for a longer period than during the continuance and until the termination of not more than two lives' in being at the date of the instrument containing such. limitation or condition, or, if such instrument be a will, for not more than two lives in being at the death of the testator.” (1 R. S. 773, § 1.) Any limitation that may by possibility extend the suspension beyond two specified lives in being at the death of the testator is illegal and void. The possibility at its creation, says Chancellor Kent, that the event on which it depends may exceed, in point of time, the authorized period, is fatal to it. (4 Kent’s Com. 283; Hawley v. James, 16 Wend. 61; Gott v. Cook, 7 Paige, 521; Kane v. Gott, 24 Wend. 641.) The test as to alienability or absolute ownership is, whether there are always persons in being and ascertained by whom an absolute estate in possession can be immediately conveyed. (Gott v. Cook, supra.)
The devise and bequest are to the executors in trust, and the direction to convert the real estate into personal, renders it a trust of personal property. The estate is given to the trustees, and neither of the beneficiaries took any legal estate or any legal interest whatever in the residue of the testator’s property, real or personal. After the payment of debts and specific legacies and charges,. the executors were to hold, use and manage the trust fund, and accumulate the same until all of the testator’s three younger children should become of age, and then to pay over such fund, and the accumulations thereof, to them, or to the survivors or survivor of them, or to the children of either who may have died leaving lawful issue, share and share alike. The trust of the residue was, therefore, to continue during the minorities of the testator’s three daughters, and could only terminate by the death of all, or all living should reach their majority, The children for whose *99 benefit the trust was created were all minors at the death of the testator, the youngest being about five years old; and if the trust was of the entire fund, and not three separate trusts for the beneficiaries, and ■ the children did not take equal and several shares under the residuary clause, and an immediate vested interest in their respective shares, the trust term was not limited according to law unless there was an absolute and present gift of the residuary fund in equal and several shares to the beneficiaries, vesting the interest of each in her respective share of such fund, or, in • other words, there was a present gift of an equal undivided third, and a separate trust created for each child, and not a gift to the executors in trust of the entire fund, the ‘absolute ownership of the fund would be suspended for more than two lives in being at the death of the testator. The trustees could not alien or divest the estate from the purposes of the trust, and the children could not, for no absolute interest or ownership would vest in them until all became of age. There being no absolute or perfect. estate given to the children until ,the youngest attained the age of twenty-one years, there would be a suspension of the absolute ownership of the fund during the continuance of the trust. The trust was to continue until the three minor children attained their majorities. It might happen that two of the lives would fall in before all attained their majority; and, it being so, the further continuance of the trust during the residue of the other minority would extend it beyond, two lives. It is clear, therefore, that if there was an entire trust created in the residuum of the testator’s estate, and the respective shares of the three children named as the objects of the testator’s bounty did not vest immediately in severalty upon his death, such trust term would fall within the condemnation of the law of perpetuities in respect to either real or personal estate.
I am of the opinion that regarding the provisions of the testator's will generally, and especially those of the tenth *100 clause, bis intention was that the principal of the residue of his estate, together with its accumulations, should be kept entire until all of his three younger children should reach the age of twenty one years, when they were to take such residue with its accumulations; and that whilst a discretion was given to the executors to apply so much of-the income 'as they deemed necessary towards the maintenance of the children, a discretion was also given to apply such income either to maintenance or accumulation. The leading intent seems to have been that the corpus of the estate should not go to the three beneficiaries until all became of age, but should be kept for the purposes of the trust until that event occurred. The trust was certainly to continue during the minorities of all the children, and could only be terminated by the death of all before - reaching majority; and the intention seems to be plain that although they were ultimately to share equally in the residue, it was not until the purposes of the trust had been fulfilled. The capital of the residuum and its accumulations, were to be held'in trust until all of the three children should become of age, with a discretion .in the executors to use the income, and if necessary the principal, for the maintenance and education of each child during her minority, if she should remain unmarried; .to advance to the two eldest upon attaining their majority, in anticipation- of the receipt of their shares at the termination of the trust, such sums as in the discretion of the trustees they might deem advisable and proper; and in the event of either of them being married before the trust was to end, to pay ,to her on account of her share, the sum of five hundred dollars for an outfit, provided the marriage could with reasonable propriety be sanctioned and approved by the executors. Examine for a moment the residuary clause of the will. The interests under it of the beneficiaries are made contingent, and not vested interests. No interest vests in either one of the daughters, or ip. her issue, until the former arrives at majority, or dies *101 leaving issue. The only gift contained in the will is the direction to pay to the daughter at twenty-one, or to her issue, if she dies before then leaving issue, and futurity is of its substance. There is no gift of the interest of the fund to each beneficiary, but principal and interest are blended in the bequest, and the interest on the whole fund if given generally to the three beneficiaries during their three minorities, and not interest on any specific share to either. The fund is regarded and treated as a whole, and the executors are made trustees of the whole, and not of the separate parts for the beneficiaries. The will directs the management and use of the fund as an entirety, and not in distinct shares. The accumulation which it directs is of the interest on the whole fund as an entirety, and is to continue until the happening of the event upon which payment depends, that is, the majority of the youngest daughter. The income of the whole residue, and if necessary the principal, is to be.used for the education and support of all" the children, during the whole period of the trust, and for the last minor, after the interests of the two elder have vested, as well as for the others, and while all are minors. Whatever moneys are expended by the trustees in the education and support of the three children, are expressly directed to be taken from and charged upon the entire fund. The directions to the executors to make advances to the two elder daughters after attaining their majority, in anticipation of the recéipt by them of their shares, does not affect the question of the singleness of the fund or of the trust, it being simply a direction to charge those advances upon the shares to which the daughters may become entitled, if the events happen which are to give them title. The same rerqark applies to the direction to advance marriage portions to the daughters. The direction to charge these portions against each child only refers to the event of such child taking a share of the fund, and does not vest what is still contingent and uncertain. Taken *102 together, the whole of the tenth clause of the will creates not three distinct trusts, hut a single fund, and one entire trust, and suspends the absolute ownership of the trust fund until the arrival of the period and the happening of events calling for the vesting and payment of the shares of the cestui que trusts. There are not now, persons in being who can make a complete and absolute title to the fund. No such title could be made, to any interest in it while all the children are minors, nor to the whole of it while any of them are under age. It could not be effected by an assignment or conveyance even of all the daughters, as one might die leaving issue before attaining majority, and such issue would not be barred, and their mother’s share would go to them, and not to the surviving sisters. • This might happen on the last day of the trust term, or on the last day of the minority of the daughters.
It is said that the last paragraph of the tenth clause oí the'will,, which disposes of the residue, is totally irreconcilable with, and cannot possibly stand with the third paragraph; and to prevent the failure of both from uncertainty, the one last in local position must prevail as denoting a subsequent intention, and the other be sacrificed. But there is no such repugnancy. Construing the tenth clause as a whole, it is, .in substance and effect, a direction to pay over the fund at the termination of the trust to the survi vars or survivor .of the testator’s three daughters, or to the children of either who may have died leaving lawful issue, share and share alike. The direction in the eighth para graph of the tenth clause is, that if any of the three chil' dren shall die before-she shall become entitled to be paid in full the amount coming to her for her' share (that is, before the youngest reaches the age of twenty-one years), and shall leave lawful issue, her share shall immediately belong to, and go to such issue; but if she shall so die without such issue, then her share shall go to the survivors or survivor of the three daughters. The share which will *103 belong to the issue of" either of the children (if either should die before twenty-one leaving issue), will not be payable until the period fixed in the will, viz: the majority of the "youngest child. The direction is for the vesting, but not'the payment of the share on a death leaving issue. The actual and entire interest of each daughter cannot be ascertained until the period fixed for distribution arrives. If two of the daughters should die successively under age, and without issue, by the death of the first her share would survive in moieties to the two surviving; and on the death of the second not only the original, but the accrued interest would survive to the third, so that she would take the whole. This is clearly the testator’s meaning. He did not intend intestacy as to any part of the residue. But this could only be affected by regarding and treating the legacies as an aggregate fund divisible among a class of persons at a definite period. If these were separate bequests of distinct interests in the residue, an accrued share could not survive. (Worlidge v. Churchill, 3 Brown’s Ch. C. 465.)
I concur, therefore, with the supreme court in the opinion that this residuary bequest suspended the" absolute ownership during the three lives of the three youngest daughters of the testator. There is an entire trust of the residue to continue for three lives, with the absolute ownership of the fund suspended during its continuance. There are-no provisions of the tenth clause of the will (except perhaps the appointment of the executors as testamentary guardians), • which do not necessarily depend on this trust. The case of Gilman v. Reddington (24 N. Y. R. 9) was not unlike the present in many material respects. There was a trust to the executors to manage and apply the residue of the testator’s estate, real and personal, or the income thereof, or so much of the estate or income as they should see fit in the exercise of a sound discretion to the.education and support of his three infant children, or of such of them as *104 should survive, or of the issue of any that might die, until the two youngest should attain the age of thirty years, or until those two children should be dead; at which time the trust estate was directed to “be paid, conveyed, or made over” to the said three children, or such of them as should then survive, or to the issue then living of such as might be dead, in equal proportions. So that the issue might have the share, of the parent. The executors were appointed the guardians of the children with direction to take the care and superintendence of their education, and they were also directed to take the whole care of their property, and to keep it well invested for their benefit, with a discretion to invest not more than half in productive real estate. In no other part of the will was anything given to the children. It was held that the absolute ownership of the fund was suspended, during the continuance of the trust, but the devise was sustained because the trust terminated at the end of two lives, while here it is to continue for three lives.
It is urged that as it was the general and principal intent of the testator to give the whole of the residue of the trust fund in the hands of the executors, and the accumulations thereof, to such of his three younger children .as should be living at his decease—and that each child, during her minority, should be supported and educated, by the executors while acting as her testamentary guardians, out of the income of the trust fund, if sufficient for the purpose, and if not, the deficiency to be taken from the principal—we should in effect make a new will for the testator, by declaring that he did not mean to postpone the vesting of the interests of the beneficiaries in the fund until the youngest child should reach her majority, but that each child took a distinct and separate interest in the fund at the testator’s death. But we cannot alter the will, if we were inclined to do so. How can we say that he did not intend to postpone the period of vesting of the whole trust fund until his youngest daughter, Alice, should reach her *105 majority? It is probable that if he had been informed that, he could not limit a trust of the residue of his estate upon the lives of this three daughters, he would have limited it differently. Yet, still it is very apparent that a leading and prominent purpose of the testator was that the residuary trust fund, as an entirety, should be employed for the maintenance and education of his three daughters, until the youngest (who was but four years old when the will was made) should come of age. Undoubtedly the testator intended that the three children should take like shares in the fund, but the intention is equally manifest that .the talcing should be postponed during their minorities.
I think the bequest of the residuary estate of the testator was so limited as to create a perpetuity. The judgment of the supreme court should be affirmed.
Johnson and Hogeboom, JJ., concurred with Weight, J.
Judgment reversed.