## LADD, as Trustee, etc., *v.* MILLS and others.

*(Circuit Court, S. D. New York. July 6, 1884.)*

1. PERPETUITIES—REALTY—PERSONALTY.

The laws of New York prohibit the suspension of the power of alienation of both real and personal property by any limitation or condition whatever for a longer period than during the continuation and until the termination of not more than two lives in being.

2. SAME—"POWER OF ALIENATION"—"UNQUALIFIED OWNERSHIP."

The statutes of New York use the term "power of alienation" in reference to real estate, and "unqualified ownership" in reference to personal property, in prohibiting perpetuities, but the meaning of the terms is synonomous.

3. SAME—PERSONAL PROPERTY.

The prohibition upon suspending the absolute ownership of personal property for a longer period than during two lives in being is directed to the accumulation of interest and income upon trusts in expectancy, and does not apply where all the *cestui que trust* are in being and may lawfully join with the trustee in an alienation of the property.

4. SAME—PATENT—TRUSTEE—RESUME OF FACTS.

If two parties, one having exclusive patent-rights in certain territory, the other similar rights in certain other territory, and the two jointly as to still other territory, join in an instrument giving a third party the sole powers (1) to convey rights, etc., in states and territories, with certain exceptions; (2) to do likewise as to the excepted states and territories; (3) to collect money and royalties: and (4) to bring certain suits at request of either party,—all under certain restrictions and in trust for the benefit of the owners, the trust to continue for the unexpired term of the letters patent,—the legal effect of such an instrument is to make the assignee an agent to carry out the joint instructions of the makers, so that it may be out of the power of either of the two to injure or be injured by the other or his representatives after his death; and the statutes prohibiting perpetuities have no application, as no person has any interest in the trust, present or in expectancy, except the persons who create it for their own benefit.

In Equity.

*Rodman & Adams,* for complainant.

*Bartlett, Wilson & Hayden,* for defendants.

WALLACE, J. At the hearing of this cause the question was reserved for further consideration whether the complainant acquired title to the letters patent granted to Clements & Fowler under the trust assignment to him executed by the owners of the patents.

It is insisted for the defendants that the trust estate created by the assignment is void because the absolute ownership of the patent is suspended for a longer period than two lives in being, and as the main intent and object of the assignment is thus to suspend illegally the power of alienation, the assignment is inoperative. If no efficacy can be given to the assignment without sanctioning a prohibited trust, the complainant's title is null.

As the trust was created and its objects are to be carried out in this state, the defendants' position that the validity of the transfer is to be tested by the rules of the local law is correct. The laws of this state prohibit the suspension of the power of alienation of both real and personal property by any limitation or condition whatever for a

longer period than during the continuance and until the termination of not more than two lives in being. The statutes use the term "power of alienation" in reference to real estate, and "unqualified ownership" in reference to personal property, in prohibiting perpetuities, but the meaning of the terms is synonymous. *Gott* v. *Cook,* 7 Paige, 542; *Everitt* v. *Everitt,* 29 N. Y. 71.

The trust assignment by which the letters patent were transferred to the complainant is an indenture, by the terms of which Fowler & Burrows, as parties of the first part, sell and assign to the complainant, as party of the second part, all their interests in the patent, to be held and owned by him, not for his own benefit, but as trustee upon certain enumerated trusts. These trusts may be summarized as follows: (1) To sell rights and grant licenses in and under the patent for any state or territory, (excepting certain specified states,) upon any *bona fide* application made to him therefor, at a price equal to $1.50 for each 1,000 inhabitants of the state or territory, according to the last official census of the United States; (2) to sell rights and grant licenses for all the excepted states upon the joint request of the parties of the first part, and upon such terms as they signify; (3) to collect all moneys and royalties accruing from sales and licenses, and at stated times divide the same, after paying disbursements and commissions, into two equal parts, and pay over one part to Fowler, or his executors, administrators, or assigns, and the other part to Burrows, or his executors, administrators, or assigns; (4) upon the request of either of the first parties, but not otherwise, to institute, carry on, and defend suits and proceedings to protect the patent and the interests vested in him, or to enforce or annul any license or sale. By further conditions of the instrument the parties provide for the selection of a successor in the trust to the complainant in case of his resignation or death; the first parties covenant to save the second party and his successors harmless from all loss and liability by reason of the execution of the trust; and the second party covenants to faithfully discharge the duties of the trust. The instrument also provides for the continuance of the trust during the unexpired term of the letters patent; and each of the parties of the first part covenants that before he sells the rights and interest which he has in the trust created by the instrument, he will offer the same to the other, his executors or administrators, upon the terms upon which he proposes to sell.

From the recitals in the instrument it appears that Fowler owned the exclusive interest in the patent for certain territory, and Burrows owned the exclusive interest for certain other territory, while as to still other territory they were joint owners; and, upon reading the whole instrument, it is quite apparent that it was designed to restrict the power of either to deal with his exclusive interests to the prejudice of the other, and to affect a community of interest in the whole property. With this view a third person was selected as trustee and invested with the title of each, for the joint use and benefit of both.

Each put it beyond his power to sell rights or grant licenses in his own territory, but authorized the trustee to do so on specified terms, while in the territory which they owned jointly the trustee was authorized to sell rights and grant licenses only upon their joint request. The legal effect of the instrument was to make complainant their agent, his powers being coupled with an interest to carry out their joint instructions. Some of these instructions were given in advance, so that neither one of the parties could revoke them, and as to these he had full power to act. Others were reserved, and as to these he was only to act upon their joint request. The instrument is undoubtedly effectual to prevent either of the parties of the first part from transferring any interest in the legal title to the patent during the unexpired term of the patent to third persons, and in the event of the death of either party to prevent his legal representatives from doing so; and to this extent it operates to suspend the power of alienation for a period longer than the two lives of the parties who created the trust.

Such a restriction upon the right of the joint owners to deal with their property is not objectionable, and the statutes prohibiting perpetuities have no application to the case. These statutes, which add some qualifications to the rule at common law, relate only to future estates. The prohibition upon suspending the absolute ownership of personal property for a longer period than during two lives in being is directed to the accumulation of interest and income upon trusts in expectancy. The power of alienation can only be suspended when there are no persons in being by whom an absolute title to the property can be transferred. It is suspended when it cannot be exercised. It may be suspended by the creation of future contingent estates, which are not to vest within the prescribed period, or by the creation of a trust for beneficiaries who cannot join with the trustee in a conveyance which will not be in contravention of the trust. But unless a future estate, contingent or in trust, is created, the power of alienation is not suspended, because an unqualified title can be transferred at any time when the parties in being choose to join in a conveyance of their several legal or equitable interests. No such estate was created here by the trust agreement, because no person had any interest in the trust, present or expectant, except the persons who created it for their own benefit. It is competent for them at any time to join with the trustee and make a valid transfer of the whole property in the patent. Moreover, the trustee is merely their agent to carry out their joint-instructions, and upon tendering him any commissions to which he may be entitled, Fowler & Burrows can at any time revoke his powers, so far as they have not been executed, and insist upon a transfer of the legal title to the patent.

A decree is ordered for complainant.