F. H. Harris, assignee, *v.* A. F. Judd, administrator estate R. W. Holt.

## SUPREME COURT—IN BANCO.

## JANUARY TERM—1873.

*Allen, Ch. J., Hartwell and Widemann, J. J.*

FRANK H. HARRIS, ASSIGNEE OF OWEN JONES HOLT, *vs.* A. F. JUDD, ADMINISTRATOR WITH THE WILL ANNEXED OF THE ESTATE OF ROBERT W. HOLT, DECEASED.

WHEN the TESTATOR devised one fourth of the INCOME of his estate to be paid to Owen J. Holt (his son) for his USE AND SUPPORT during his natural life, "remainder in fee to the son's heirs generally," the son takes a VESTED INTEREST which he can ASSIGN. (ALLEN, C. J., dissenting).

The executor in such case holds the LEGAL ESTATE by virtue of a purchase made by him, by the son's assent, for the benefit of all the heirs, BY ESTOPPEL.

### AGREED STATEMENT.

"The undersigned respectfully represent unto your Honorable Court, that Owen Jones Holt, being indebted to various

persons in very considerable sums of money which he is unable to pay, did on the 10th day of July, A. D. 1871, make an assignment to the undersigned F. H. Harris, a copy of the deed of assignment being hereunto annexed, marked ' Exhibit A,' and made a part hereof.

"And the undersigned further represent that the said F. H. Harris did proceed to sell certain personal property belonging to the said Owen Jones Holt, the proceeds of which were insufficient to pay the debts of the said Owen Jones Holt, but that a large sum remains due and owing.

"And the undersigned further represent that Robert W. Holt, father of the said Owen Jones Holt, made and executed as for his last will and testament a certain writing, a copy of which said writing is hereunto annexed, marked ' Exhibit B,' and made a part hereof.

" That the said Robert W. Holt, subsequently to the execution of the said last will and testament, deceased, and that the document hereinabove referred to, was duly admitted to probate on the 26th day of July, A. D. 1862, as and for the last will and testament of the said Robert W. Holt.

"And the undersigned further represent that there is in the hands of A. F. Judd, administrator as aforesaid, one of the parties to this submission, the sum of ($60,000) sixty thousand dollars, or thereabouts, in cash, as principal, belonging to the estate of the aforesaid Robert W. Holt, deceased.

"And the undersigned F. H. Harris, claims that the proportionate share of the income or interest derived from the said money, which is directed by the said will of the said Robert W. Holt to be paid to the said Owen Jones Holt, should be paid to the said F. H. Harris, assignee as aforesaid. But the undersigned A. F. Judd, administrator as aforesaid, on the contrary, claims that the one quarter of the interest of the said sum of sixty thousand dollars should be paid to the said Owen Jones Holt, and to him alone, and that

the said one quarter interest is not assignable or liable for the debts of the said Owen Jones Holt.

"And further, the undersigned represent that there is a large amount of real estate belonging to the estate of the aforesaid Robert W. Holt ; and the undersigned F. H. Harris, assignee as aforesaid, claims that he has the right of possession of and to one quarter of the real estate in said will devised, for and during the natural life of the said Owen Jones Holt, and the right of disposing of the said life interest for the purpose of paying the debts of the said Owen Jones Holt ; and that the said quarter of the said real estate should be separated and set apart from the rest of the estate devised by the said Robert W. Holt, so that he may have the opportunity of disposing of the same for the purpose aforesaid. But on the contrary, A. F. Judd, administrator as aforesaid, claims that he is entitled to the possession of the real estate hereinabove referred to, and may assign the same for the residence of the said Owen Jones Holt, or may rent the same and pay the rent that may be received to Owen Jones Holt himself and to no one else, and that the same is not liable for the debts of the said Owen Jones Holt.

"And the undersigned A. F. Judd, administrator as aforesaid, avers that on the 22d day of November, A. D. 1862, an indenture was entered into between W. A. Aldrich, executor of the last will and testament of the said Robert W. Holt, deceased, and James R. Holt and Owen Jones Holt, a copy of which is hereunto annexed, marked 'Exhibit C,' and made a part hereof; and the undersigned Frank H. Harris, assignee as aforesaid, admits the said document to have been made, signed and delivered as therein set forth ; and the said A. F. Judd claims that the said document constituted the only right of possession of the said James R. Holt and Owen J. Holt, his brother, to the lands set forth in the said document ; and it is agreed by both parties to this submission that James R. Holt has sold and conveyed all his right, title

and interest in the lands set forth in the said document to the said Owen Jones Holt. But on the contrary, Frank H. Harris, assignee as aforesaid, claims that the said agreement in no way changed the title of the said Owen Jones Holt in and to his proportion of the lands devised by the will of the said Robert W. Holt, his father.

"And the undersigned A. F. Judd, administrator as aforesaid, avers that the will of the said Robert W. Holt, deceased, created the executor of the said will and his successors in the said trust, a trustee, to hold the said real and personal estate thereby devised and bequeathed, and to pay over one quarter of the net rents, issues and profits of the said estate to the said Owen Jones Holt, for and during the term of his natural life, for his use and support, with remainder to the heirs of the said Owen Jones Holt and their assigns, and that the said life interest and estate of the said Owen Jones Holt is not alienable or assignable, and that the same is not liable for the debts of the said Owen Jones Holt, and that the said interest of the said Owen Jones Holt is an estate in common with the other devisees and cannot be severed. 'But on the contrary, Frank H. Harris, assignee as aforesaid, avers that the said interest and estate of the said Owen Jones Holt is alienable and assignable, and liable for the debts of the said Owen Jones Holt, and that the estate of the said Owen Jones Holt, in the premises, can and should be severed; and that the said Owen Jones Holt can and ought to hold his share of the said estate in severalty during his life, and so likewise his assigns, or persons holding under him by authority of law or otherwise.

" Dated at Honolulu this 7th day of October, A. D. 1872.

" (Signed) F. H. Harris,

"Assignee of Owen Jones Holt.

" (Signed) A. F. Judd,

"Administrator with the will annexed of the estate of Robert W. Holt, deceased."

F. H. Harris, assignee, *v.* A. F. Judd, administrator estate R. W. Holt.

[Exhibit A is an ordinary deed of assignment, with power of attorney.]

## Exhibit B.

First—I give, devise and bequeath to my wife, Wati Holt, for the term of her natural life the sum of eight hundred dollars, to be paid to her yearly in quarterly payments of two hundred dollars, by my executor hereinafter named, for her maintenance and support.

Third—I give, devise and bequeath to my son, Owen Jones Holt, one quarter of all my estate, both real and personal, the income of the same to be paid to him by my executor hereinafter named, for his use and support for the term of his natural life, and after the death of my said son, I give, devise and bequeath the said one quarter to the heirs of the said Owen Jones Holt and their assigns.

[Clauses 2 and 4 providing for the other sons the same as for O. J. Holt.]

Fifth—I give, devise and bequeath to my daughter, Elizabeth M. Aldrich, wife of W. A. Aldrich, one quarter of all my estate, both real and personal, and to her heirs and assigns.

Sixth—I ordain and appoint William A. Aldrich executor of this my last will and testament.

[Exhibit C, indenture of lease referred to in the opinions of the Court.]

OPINION OF CHIEF JUSTICE ALLEN, DISSENTING, FROM THE JUDGMENT OF A MAJORITY OF THE COURT.

This is a case of submission under the statute, by F. H. Harris, assignee of Owen Jones Holt, and A. F. Judd, administrator with the will annexed of the estate of Robert W. Holt, deceased.

It appears by the submission, that Owen Jones Holt made an assignment of all his property, for the benefit of his cred-

itors, to F. H. Harris, and by force of which he claims all the interest in the estate which was bequeathed to him by Robert W. Holt, by his will.

On the contrary, it is claimed by the administrator that, by the will, he is created a trustee to hold said real and personal estate thereby devised and bequeathed, and to pay over one-fourth of the net rents, issues and profits of the said estate to said Owen Jones Holt during his life, for his use and support, with remainder to the heirs of said Owen Jones Holt and their assigns, and that said life interest is not alienable or assignable, and not liable for his debts.

By the will a bequest is made by the testator for the term of the natural life of his wife of the sum of $800, to be paid to her yearly in quarterly payments of $200, by the executor. And a bequest is made to Owen Jones Holt of one quarter of the estate of the testator, both real and personal, the income of the same to be paid to him by the executor for his use and support for the term of his natural life, and after his death there is an express bequest of the said one-fourth part of the estate to his heirs and their assigns.

Jarman says : "There is no principle of law more generally admitted than that the intention of the testator should be carried out. No degree of technical informality or of grammatical or orthographical error, nor the most perplexing confusion in the collocation of words, or sentences, will deter the judicial expositor from diligently entering upon the task of eliciting from the contents of the instrument the intention of the author, the faintest traces of which will be sought out from every part of the will, and the whole carefully weighed together."—Smith *vs.* Bell, 6 Peters, 198 ; Hona *vs.* Skelton, 2 Met., 194 ; Morton *vs.* Bennett, 22 Maine, 257.

Buller, Justice, in the case of Hodgson *vs.* Ambrose, 1 Douglas, 342, says : "If the intention is apparent, I know of no case that says that a strict legal construction, or a technical sense of any word whatever, shall prevail against it."

F. H. Harris, assignee, *v.* A. F. Judd, administrator estate R. W. Holt.

It is very evident that the first obligation of the executor imposed by the will, is to pay the testator's wife $800 per annum during her life, in quarterly payments, and the whole property is held by him in trust for that purpose.

2d. It is made the duty of the executor to pay to Owen Jones Holt, a son of the testator, the income of one-quarter part of this estate demised *for his use and support* during his life, and a bequest over to the heirs of said Holt.

The instrument might have been more explicit in declaring the duties of the executor, but they are clearly implied. It is very clearly his duty, therefore, to take charge of the estate and manage and improve it, and collect the rents on the real estate, and the income from the personal property, interest on notes and mortgages, &c., &c.

In the celebrated case of Leggett *et al. vs.* Perkins, (New York Rep., 2 vol., 297), testator gave two-fifths of his real estate to his two daughters, so that each might have and enjoy the income of one-fifth during their lives, and on their death their shares to go to their issue. He appointed executors and constituted them trustees, and authorized and desired them to manage and improve the estate, and to pay to his daughters from time to time the income.

The Court held that the will vested the legal estate in the trustees during the lives of the daughters ; and, 2d, that the trust was valid.

The testator provided further that the net income should be paid to the daughters, after marriage, without the consent of their husbands. The Court say, "that if the husband took an estate by the curtesy, as he would if the fee vested in the daughter, he would be entitled to the rents and profits, and the separate provision for the daughter would be totally ineffectual."

No particular form of expression is requisite in order to create a binding and valid trust, but it is requisite that the testator should have pointed out with sufficient clearness and

certainty both the subject matter and the object of the trust. (1 Redfield, 700.) The subject is the income of the property held by the executor, and the object the payment of the same for the use and support of his son, both are clearly set forth in the will.

Jarman says, (vol. 1, 332), "Technical language, of course, is not necessary to create a trust. It is enough that the intention is apparent." By the common law the trustee must apply the trust fund according to the instruction of its author. There has been great conflict of opinion on the question of trusts, and Redfield says, (1 vol., 702), "that no one feels any confidence in relying upon any decision in regard to trusts, unless it has been very recently made, or else many times recognized in the later decisions of the Courts." What was the intention of the father when he vested the title of the property in the executor as a trustee, and directed him to pay the income for the use and support of his son? Was it not clearly his intention that the estate should remain intact, and that payment should be made from time to time to the son, as may be necessary for his support. In the case of Leggett *vs.* Perkins, the Court say : "It is said that if a person is competent to take care of the money when paid over, there is no reason why the estate should not be transferred to him, out of which it is raised. But to be influenced by this suggestion, we must not shut our eyes to the light of history and experience. Every one knows that there are individuals in every society who are neither imbecile nor profligate, nor united with those who are so, who could properly dispose of a fixed income, and yet who ought not, from prudential reasons, to control the capital out of which it is raised." This reasoning applies with peculiar force to our own people. They are generous, and hospitable, and liable to be misled by the designing and unprincipled. The young are often enticed into idle and dissipated habits and become entirely reckless of consequences either to health or property.

To guard against those evils and propensities, the father undoubtedly imposed the restrictions contained in the *will*, which exhibited a wise foresight as well as a parental regard for the happiness and independence of his son.   If, in this case, the beneficiary has the legal right to assign the income during his life, he virtually disposes of his interest in the property, and thereby defeats the intention of his father.

In the case referred to above, and also in the case of Gott *vs.* Cook, (7 Paige, 538), "great discussion has arisen as to the force of the terms used in trust deeds, and especially on the distinction in legal effect, between the words to pay over the income to a beneficiary or to apply it to his use."

The statute, as originally framed and passed, authorized a trustee to receive the rents and profits of lands, and apply them to the education and support of the beneficiary, or either of them.   This was regarded as too limited in its application, and the word use was substituted, as the revisors of the law said that the word use includes education and support, and also other purposes which ought to be provided for.

The Chancellor says, "that the great object of the statute is attained, if the property by means of the trust is placed beyond the reach of those who might squander the rents and profits in anticipation, or might allow the property to be taken for previous debts."

Judge Bronson, in his dissenting opinion in this case, says, " that the statute authorizes a trust to receive the rents and profits of land and apply them to the use of any person, but whether under this provision a valid trust can be created to receive rents and profits to pay them over to the beneficiary is a question which has undergone a good deal of discussion in the books.

" There is, in my judgment, a very plain and substantial difference between the statute trust, to receive rents and profits and apply them to the use of another, and such a trust as the testator has made, to receive rents and profits and pay

them over as a debt due to another. In the one case the trustee has a discretion in the application of the money, in the other he has none.

" If the trust had been created in the words of the statute to receive and apply rents and profits, or in any other equivalent words, no one can doubt that the trustee would have had the right to control the expenditure of the money.

" When the trust is to receive and apply rents and profits, I have never met with any judge or lawyer who denied that the trustee had authority to make the application of the trust money."

By the language used in the will, when the income is to be paid over for use and support, a discretionary power is vested in the trustee. It is not a payment only, but a payment for the use and support of the beneficiary. A Court of Chancery will always protect a trustee who acts in good faith and refuses to place the income in the hands of the beneficiary, to be wasted in dissipation or otherwise.

When the father gave to the trustee authority to apply the income to the use and support of his son, was it not for the very purpose of preventing the possibility of his squandering it? Had it been a life estate, without limitation, over which the beneficiary had the entire control, no such language would have been used.

I am of opinion that a valid trust is created, and that the trustee is empowered to receive the rents and profits and apply them to the use of the beneficiary, after they have been received him.

In the case of Ames *vs.* Clark, (106 Mass., 573,) the language of the will is that Hannah B. Mason gave to William Clark, her brother, $600 annually, for his life, to be paid by the executors in equal quarterly payments, with the further provision that no part of the bequest should, while remaining in the hands of the executors, be liable for any of the debts of said Clark. The Court regarded the annuity as a vested right which was assignable.

F. H. Harris, assignee, *v.* A. F. Judd, administrator estate R. W. Holt.

This case differs materially from the case at bar, in not imposing a duty of applying the money to the use and support of the devisee, but merely to pay it over. In the one case the payment is peremptory, in the other is discretionary in the executor to see that the income is applied to the support of the beneficiary, and not expended in dissipation.

In the case of Palmer *vs.* Stevens, (15 Gray, 343,) similar language is used; payment was to be made on the sole receipt of the beneficiary. Both cases are clearly distinguishable from this case, and are in conflict with the decisions in the case of Leggett *vs.* Perkins, and Gott *vs.* Cook.

In the case of Perkins and another, (3 Gray, 405,) Executors *vs.* Hays and others, it appears "that the testator bequeathed an annuity to his widow, to be paid to her clear of all charges and deductions whatever during her life; or in case of her incapacity at any time by sickness or otherwise, to receive it, to any person lawfully appointed to represent her; or in default of such appointment, to be applied by his executors to her support, and the support and education of his minor children. *Held*, that the widow had no power to alienate any part of the annuity by anticipation."

The Court say "that alienation by the widow clearly exceeds any power of disposition given by the will, and tends directly to defeat the clearly expressed purpose and intention of the testator."

The analogy in the cases is peculiarly strong. In the case cited, it is a gift to be paid quarterly, and on certain contingencies to be applied by the executors to the support and maintenance and education of the testator's children.

In the case at bar it is a devise of a certain proportion of income to be paid for the use and support of devisee.

The Court in the case cited says, "that the power of alienation by anticipation is inconsistent with and would tend directly to defeat the main object and purpose of the will.

The power is not given in terms. A power may be implied to effect the purposes of the testator, but never to defeat them."

This is a principle in the construction of wills, and should never be disregarded, for the purposes and intentions of the testator should be carried out. The power of alienation is not expressed in the case, and it is against all the authorities to imply it—more especially as it defeats the purpose of the testator in applying the income to the use and support of the devisee.

In the case cited the Court say, "that because it is her separate estate, she has the power of alienation by anticipation is to assume the question. It is only her estate, subject to the limitations and restraints imposed by the will. It is separate in this view, clearly, that it was intended for her use and support, and not to pay the debts of others." The Court in this case were all of opinion that the assignment by the devisee clearly exceeded the power given her by the will. Any other construction will defeat the object and purposes of the testator, when he says that the income shall be paid for the use and support of his son during his natural life.

It is very significant in showing clearly the intention of the testator, that while his devise to his son is limited, that to his daughter is without limitation of one quarter of his estate, both real and personal, and to her heirs and assigns.

The one has the income for life, for his use and support; the other has the entire property without any limitation.

The law protects a parent's intention in making a provision for a child. It is a noble purpose in a parent to shield a child from want, and the law should aid in the accomplishment of this purpose, for when estates are limited in the bequest the presumption is that the testator had apprehensions lest the beneficiary might be improvident or injudicious in the management or disposition of the estate.

A parent has a right and it is his duty, if he has the means, to save his child from the alms house to be supported at the public expense, and there is no other mode to do it, than to provide an income from some fund, or productive estate, placed beyond his control.

Had it been the intention of the father in this case, to give the son a life estate, absolute, such would have been the language of the will, but it is limited to the income, to be applied to his use and support during his natural life. This trust which imposed upon the executor the duty of paying the income for the use and support of the son, would be entirely defeated, if the son had the power to alienate the income for his life.

But it is said, that such a trust cannot be sustained because it is a fraud upon the creditors of the son.

This interest in his father's estate was a matter of public record, and every one inclined to give credit to the son, could decide for himself his interest in the estate, or wait till the Court had given a construction to the will. There can be no fraud where there is no concealment, and if any one has given credit to the son, he had the means, by which he could judge, whether it was safe to give credit, or not. To save improvident persons from squandering their interest in property, is often a reason for a trust like this. But no creditor can properly complain who had the means of knowing the precise pecuniary situation of the son, as in this case, so far at least, as it was affected by the will of the father. Suppose, for example, that the son was insane, would it not be the duty of the executor to devote a necessary portion of the income to his use and support, probably in an insane asylum ?

In most cases, executors pay to the beneficiary the income, periodically, and they use it is they deem proper, and should devote all in their power to pay their debts, but the father's intention must not be defeated by enabling the son to control his interest in the entire property, from which the income arises.

55

Mr. Justice Bronson says in the case of Leggett vs. Perkins, "that there may be cases where paying any considerable portion of the money to the beneficiary would not be applying it to his use, within the meaning of the statute. If he is a lunatic or spending the money in gaming and drunkenness while his wife and children are suffering from cold and hunger, it would be a breach of the statute trust to put the money into his hands."

Jarman, vol. 1, 264, says, it is to be supposed that where real and personal estate is given together, that the testator had the same intention with respect to the funded property, and the real estate—in this case there is no discrimination made between the personal and real property. The legacy to the mother is to be paid from the income of the property both real and personal. This is the first claim, all other bequests in the will are subject to this.

There is a note in 1 Redfield, 708, in these words, "But where the income only of a fund is directed to be applied to the maintenance and support of the donee, at such times and in such proportions and in such manner as the trustees shall, in their discretion, think most expedient and for no other purpose whatever, it was held, that the donee's assignees in bankruptcy were not entitled to any portion of the provisions thus made. Twopenny vs. Peyton 10, Sim. 487, supported by the cases of Bayne vs. Crother, 20 Bevan, 400.

In the case of Scott vs. Cook, 7 Paige 538, the Chancellor says that the great object of the statute is attained if the property by means of the trust, is placed beyond the reach of those who might squander the rents and profits in anticipation, or might allow the property to be taken for the payment of previous debts, and this is effectually done by the section of the revised statutes which renders the interest of the *cestui que trust* inalienable.

In the same case, it is said, that in the case of a trust to receive the rents and profits, or income of property and to

apply the same to the use of the *cestui que trust,* as authorized by the revised statutes, the *cestui que trust* if he is perfectly competent to manage his own affairs with discretion, has the right to direct how such rents, profits and income shall be applied for his use after they have been actually received by the trustee, although he cannot alien or make any other valid disposition of such rents and profits or income previous to that time.

This is the true doctrine as applicable to trusts of this character; it carries out the intention of the testator, as I interpret it from the will itself. The father desired that the income of one-fourth part of his property should be applied to the support of his son, during his life, and then that the same portion of the estate should descend to his heirs. This ruling will carry out this intention. The property will be protected and saved for the application designed by the father, whereas if it is in the power of the son to alienate it, there will be nothing in the hands of the executor, to carry out this purpose of support for the son.

The interest in that portion of the estate which the executor leased to Owen Jones Holt is assignable and its value should accrue to the benefit of his creditors; subject, of course to the conditions of the lease.

Should the income as demised, be of larger amount than is necessary for the use and support of the beneficiary, a Court of Equity would award the excess, from time to time, for the benefit of his creditors.

HARTWELL, J. The case submits the following questions, viz.: (1) Whether the administrator holds the legal estate in the testator's lands. (2) Whether the income payable to O. J. Holt under the will is at his own disposal, or its use is determined by the administrator. (3) Whether the deed of assignment is sufficient to assign O. J. Holt's income if it be at his disposal.

1. The indenture recites that by written consent of O. J.

Holt the executor of the will bought at public auction the
lands which are admitted to include those in question, for the
benefit of the legatees, and afterwards leased them to O. J.
Holt and another, whose interest O. J. Holt has since bought,
for life. This lease is admitted to be in full force, and is con-
clusive on O. J. Holt's right subject to the assignment, to
hold it according to its terms, for the executor therein ex-
pressly covenants for himself and successors that the lessee
shall have peaceable possession without let or hindrance from
him or them. The lessor is thus estopped from denying the
lessee's right under the lease, and the lessee is estopped from
denying his lessor's right to give the lease, since it does not
appear that the action of either party was produced by im-
position or taken under misapprehension of his rights.

2. In regard to the administrator's authority to direct the
application of the income payable to O. J. Holt, the will
itself, the only source of such authority, must speak. It is
agreed that the administrator holds the principal of the per-
sonal property, for the heirs, using the income to pay the
widow's annuity and for the use and support of the testator's
sons. It is only in regard to the son's income that we have
to inquire.

It is first to be observed, that the will provides for no
accumulation of income not used or required for the widow's
"maintenance and support," or the son's "use and support,"
and gives no express power to the executor to determine
what is requisite for these purposes, or to withhold any por-
tion of the income if he thinks it not requisite for the pur-
poses named ; that the widow and the sons are the only
persons interested in their respective legacies of income, and
that the will peremptorily directs the executor to *pay over*
the income to them for the above named purposes. If the
legatees have absolute control of their income after its pay-
ment, and the executor have no authority to withhold it on
the ground that he fears it will be wasted, then they may

authorize any one to collect it as it becomes due and payable.

A testator may secure the principal fund of his estate intact for the heirs of his children, as he has done in this case, or he may leave money for his children to be expended for their benefit at the discretion of his executor, without giving them any control over it. Such provisions are common in cases of profligates, persons incapable of managing their own affairs, children and married women. But such restrictions on the use and enjoyment of a legacy if not made by statute, must be based on clearly expressed language in the will, and is not inferred by a mere statement in the will of the testator's object in giving the legacy. Such I understand to be the English and American law. It is a view based on the consideration, that a provision for the exclusive benefit of a donee, with no direction to use it for any other purpose, is an absolute gift, subject to all the incidents of ownership, and that all conditions repugnant to the full enjoyment of an absolute gift are void, since of two clearly expressed but inconsistent intentions of the testator, that one must fail which is subordinate to the main intent. If a testator clearly say that money devised for the benefit of others shall be expended by a trustee for them, and shall not be at their own disposal, the direction must be followed, unless it conflict with other more important directions, or with rules of law. But Courts do not make wills, or place any unusual meaning on the words of a testator.

In this will, drafted as counsel say by an experienced attorney-at-law, the testator directs that the income *be paid* to his sons for their *use* as well as *support*, and fails to give the executor discretionary power to determine the nature of the use or to withhold the money if not used for support.

I know no cases, except under the New York statutes, which authorize the executor under such a will to direct the manner in which the income shall be expended, or to refuse

its payment, if he thinks it will not be used for support.
The New York Legislature has swept away the old rules of
English Equity concerning trusts, by enacting that none shall
be valid except those enumerated in their statutes.    One of
their statutory trusts is,  " to receive the rents and profits of
lands and *apply them to the use of any person.*"    Their stat-
utes declare that the person beneficially interested in such
trust, " cannot assign or in any manner dispose of such inter-
est."—1 N. Y. Rev. St., p. 728, sec. 55.    For many years
the New York Courts discussed the question whether a trust
to "*pay over* " was the same under their laws with a trust to
" *apply to the use.*"—Coster *vs.* Lorillard, 14 Wend., 329 ;
Hawley *vs.* James, 16 *Ib.*, 157 ; Gott *vs.* Cook, 7 Paige, 534;
Leggett *vs.* Hunter, 2 N. Y., 306 ; Leggett *vs.* Perkins, 19
*Ib.*, 454; Noyes *vs.* Blakeman, 6 *Ib.*, 581.    These cases were
argued by eminent counsel, the first two filling three hun-
dred and sixty-seven pages of the reports.    The case of
Leggett *vs.* Perkins, which was considered as settling the
point, was decided by only one vote in the majority, and that
vote as Mr. Justice Bronson in his dissenting opinion says,
was based on a decision which he " verily believed had
never been made."    The fact that so important a question .
was thus settled after such long and expensive litigation
under the explicit code of New York, is fair ground for the
view which I entertain, that a trust to "*pay over*" a speci-
fied sum for the use and support of another is by rules of law
and equity not the same with a trust to *apply* the same for
that purpose ; and especially that in the absence of statutory
prohibition, or of clear words of restriction in the will, a
beneficiary under a will is not restrained from disposing of a
legacy by the expression that it is "for his use and support,"
when no power is given to the executor to determine the
propriety of the expenditure.

A test often applied to determine whether a legacy is
vested, is to consider whether on the death of the legatee

F. H. Harris, assignee, *v.* A. F. Judd, administrator estate R. W. Holt.

any unpaid portion would go to his personal representatives, or to the residuary heirs named in the will. In the former case, the legatee has a vested interest in the legacy to use as he wishes, and in the latter case, an interest contingent on his using it for the purposes named in the will. I think this will fails to show that any portion of O. J. Holt's share of income would go to the residuary heirs named in the will. I will now refer to the English and American decisions and views of text writers on the subject.

"An express and positive devise cannot be controlled by the reason assigned."—11 Jarman's Rules for Construction of Wills ; approved by Redfield in his work on Wills, vol. 1, p. 425. "Thus money given to purchase a ring, or an annuity, or a horse, to set one up in business, or for *his maintenance and education,* was in each case held to be an absolute gift, and not to create trusts for the particular use."—1 Redfield's Wills, 708, citing the English decisions.

The rule is to be sure not applicable when the trustee has a discretion as to the amount to be applied, or when others besides the first donee are intended to be aided ; but neither of these conditions exists in the present case.

"There is a considerably numerous class of cases where the bequest has been held to vest an absolute title in the donee, and the expression by the testator of the purpose and object of the gift has been held merely descriptive of the motive of the testator in making the gift. Such are the gifts to a father, the better to enable him to provide for his younger children, towards the maintenance, education, and bringing up of the donee's children ; to enable the donee to assist the children of his deceased brother ; to enable the testator's wife to support herself and her children at her discretion."—*Ib.,* 712. The gift of the income and annuity in this case seems to me to come within the above named class.

In a recent English case, a devise to the testator's widow for the benefit of herself and family, was held to be an

absolute gift to her, the Vice-Chancellor, Sir R. Malins, saying: "I am bound to say that the modern decisions tend —and I think most reasonably tend—not to fetter this kind of discretion. The widow might give to the family if she thought proper, but she was under no obligation to do so." Lambe *vs.* Eames, 10 Eng. Equity, 270, (1870.) If the testator devise that his beneficiary alone shall have the benefit of funds, and that no right over them shall extend to creditors or purchasers, not only must he clearly state such intention, but provision should be made for disposition of the funds if not so needed or used by the beneficiary, or if he attempt to alienate them contrary to the conditions of the bequest. See Redfield's Wills, 669.

"Upon the principle which forbids the disposition of property divested of its legal incidents, it is clear that no exemption can be created by the author of the gift from its liability to the debts of the donee, and that property can not be so settled as to be unaffected by bankruptcy or insolvency." 1 Jarman Wills, 684. In Brandon *vs.* Robinson, 18 Ves., 429, Lord Eldon, Chancellor, says: "Generally speaking, if property be given to a man for his life, the donor can not take away the incidents of a life estate. The old way of expressing a trust for a married woman was, that the trustee should pay into her own proper hands and upon her own receipt only, yet this Court always said she might dispose of that interest, and her assignee would take it."

In Perkins *vs.* Hay. 3 Gray, 406, the testator's widow was not allowed to assign her interest in an annuity. But the will itself, in that case, expressly provided that the legacy · for the widow should be *by them* (the trustees), *applied* to her "support and maintenance," and also provides for the disposition by the trustees of all accumulations on the capital sum.

In Graves *vs.* Dolphin, 1 Sim. 66, cited in Jarman's Wills, 688, a testator directed trustees to pay his son an annuity for

F. H. Harris, assignee, *v.* A. F. Judd, administrator estate R. W. Holt.

"his personal maintenance and support," and that it "should not on any pretence whatsoever be subject to the debts, engagements, charges or incumbrances of his said son, but that the same, as it became payable, be paid over into the proper hands of him the testator's said son and not to any other person or persons whomsoever." *Held*, Shadwell, vice Ch., that the annuity passed to the son's assignees in bankruptcy.

"And the vesting in trustees of a discretion as to the mode in which income is to be applied for the benefit of a *cestui que trust* does not take it out of the operation of bankruptcy or insolvency, to effect which, the discretion of the trustees must extend not merely to the manner of applying the income for the benefit of the *cestui qui trust*, but also to the enabling of them to apply it *either for his benefit or for some other purpose.*" 1 Jarman's Wills, 688.

In Palmer *vs.* Stevens, 15 Gray, 343, money was devised in trust to the testator's son, "for the comfort, support and education of himself and his children, and after his decease to pay the same to his heirs at law." The son assigned this interest, and the assignment was contested, Rufus Choate and H. F. Durant being counsel for the contestant. The Court, by Hoar, J., *held*, that the assignment was valid, saying, "his right to tne income annually is complete, and absolute, and as much subject to his disposal as any other interest in property."

And see Hulme *vs.* Tenant, and Notes, 1 Leading Cases in Equity, 542.

A testator devised property to his grandchildren, directing that it should not be divided among them until after the death of his daughters. The Court said, "this restriction is clearly repugnant to the absolute and unqualified gift already made and is inoperative and void. So are all the postponements and prohibitions of the right to sell, encumber or divide the testator's property contained in the will. They

56

are repugnant to the estate given and must therefore fail."
Lovett *vs.* Gillender, 35 N. Y. 628.    In Ames *vs.* Clarke,
106 Mass., 573 (1871), a testator bequeathed an annuity in
trust for her brother for life, directing that no part of it
should be liable for his debts.    The devisee assigned the
annuity, and the assignment was disputed on the grounds
that the devisee was incapable of supporting himself for
many years, and had made the assignment without the
knowledge of those who were contributing to his support.
The assignment was sustained, the Court by Wells, J.,
saying, "the annuity vested absolutely in Wm. Clarke, (the
devisee).    As a vested right it was assignable, without words
expressly making it so in the terms of the bequest.    The
proviso that it should not be liable for his debts while in the
hands of the executor did not give the executor any authority
to control his disposition of it, nor deprive him of the right
to dispose of it by voluntary act."    And see Lanman *vs.*
Smith, 7 Gray, 151.

In Webb *vs.* Kelly, 9 Sim., 469, cited in Roper's Legacies,
1495, a gift of rents of land during the life of A, "to be
applied in equal shares for the maintenance of B and C," was
*held* to be an absolute gift to B of her half during A's life, so
that B dying in A's life, her representatives would take it.

In Soames *vs.* Martin, 10 Sim., 287, a gift of the interest
of a fund "for the maintenance of A," was *held* to be an
absolute gift.    In Nevill *vs.* Nevill, 2 Vern., 430, a bequest
of £500 to John Nevill's eldest son to "place him out to
apprentice," was *held* to be an absolute gift which the legatee
could use as he chose.    So in Barlow *vs.* Grant, 1 Vern., 254,
Cope *vs.* Wilmot, Amb., 704, Isherwood *vs.* Payne, 5
Ves., 677.

In Mackett *vs.* Mackett, 14 Eng. Eq., 53 (1872), the testa-
tor devised personal property to his widow "for her sole and
separate use," adding these words, "the proceeds to be ap-
plied by her in the bringing up and maintenance of" all her

children.   The Court *held* that " by these words he expresses
the motive of his gift.   But he lays no restriction upon the
legatee."

The case of assignment by persons under age, insane or
incapable of managing their own affairs, is not presented in
the submission, and is not connected with the view here
expressed.

For the reasons and in conformity with the decisions and
views above stated, I think that O. J. Holt's income under
his father's will is a vested and therefore an assignable
interest.

3. The deed of assignment purports to convey to the
assignee all the assignor's property " of every kind and de-
scription, whether the same be real or personal, with all
evidences of debt, demands, choses in action and other prop-
erty of every name and nature," and to authorize the
assignee to collect " all claims, demands, choses in action and
property," for the purposes named in the deed.   I have no
doubt that this instrument is legally sufficient for the pur-
poses therein named, and that the assignor's income from his
father's estate may thereby be collected by the assignee in
like manner as the assignor himself could have done.

See Story's Contracts, 376, (b. and e.)   1 Parson's Con-
tracts, ch. 14.   Burrill's Assignments, ch. 6.

WIDEMANN, J.   A valid trust was created by this will, I
think, notwithstanding that the words trust or trustee are
never mentioned.

"All the books which treat of the construction of wills con-
stantly repeat the formula that the intention of the testator is
the prevailing consideration in applying all rules of construc-
tion.   This will be found repeated an infinite number of
times in the American reports."   "And the general intent
overrides all mere technical and grammatical rules of con-
struction."

Redfield, pages 432, 33 and 34, and cases there cited.

"It was said by Lord Eldon, that the word 'trust' not being made use of, 'is a circumstance to be attended to, but nothing more; and if the whole frame of the will creates a trust, for the particular purpose of satisfying which the estate is devised, the law is the same though the word trust is not used.'"

Hill, page 101, and cases there cited. See also Jarman on Wills. Lewin on Trusts, page 149, and cases there cited.

In fact the creation of the trust as to the personalty is admitted by assignee's counsel, and the question is only raised in regard to the realty. Clause 3 of the will gives to Owen J. Holt, "one-quarter of all my estate both real and personal, the income of the same to be paid to him by my executor," etc. This is not an absolute gift, but a gift coupled with the condition that the "executor shall pay to the donee the income thereof."

In applying the above rules of construction for this clause of the will, I fail to see how the testator could, with the words he used to express his wishes, have meant and intended any distinction between his real and personal property. That the fifth clause of this will makes a different provision for a daughter does not change the intent of the third clause; the contrary, if any inference at all is to be drawn from this difference it must be in favor of the trust.

A valid trust is created by this will and the executor as trustee holds the legal estate.

The next question is: Can Owen J. Holt assign his interests in his father's estate?

It is argued that the manifest intent of this will is consistent with rules of law, and that this intention would be thwarted by paying over all the income of O. J. Holt to extinguish debts already contracted. Clause three of the will provides that the "income of the same be paid to him by my executor hereinafter named, for his use and support, for the term of his natural life, and after," etc.

F. H. Harris, assignee, *v.* A. F. Judd, administrator estate R. W. Holt.

The question, whether a trust to receive and *apply* rents, etc., is synonymous with a trust to receive and *pay over* rent, etc., has occasioned a great deal of discussion in the New York Courts, (Coster *vs.* Lorrillard, Hawley *vs.* James, Gott *vs.* Cook and Leggett *vs.* Perkins) and although in the latter case decided affirmatively, it seems to me that this decision made under the revised statutes of New York cannot be any authority for us. We have here nothing in the shape of a statute for guidance and must therefore decide this question from the tenor of the will only, and it becomes necessary to say whether the testator by the words used did give the executor a discretionary power to apply the income provided for in the will, that is to say, to withhold it or any part of it from the devisee. A careful consideration of the words used does not give one the conviction that the testator intended any such discretion on the part of the executor; he certainly failed to express clearly. I hold, therefore, that the gift to O. J. Holt of the income of one-quarter is absolute and consequently assignable.

Story Equity Jurisp. 2, §974.

Thus where a testator bequeathed an annuity to his son, "the annuity being declared to be for his personal maintenance and support during his life," "and not on any account to be liable or subject to the debts of the son, but to be paid to him and no other person whatsoever," the annuity passed to the assignees in bankruptcy of the son. "For it was said that the policy of the law does not permit property to be so limited that it shall continue in the enjoyment of the bankrupt notwithstanding the bankruptcy. The testator might have made the annuity determinable on the bankruptcy. But while it was the property of the bankrupt it must be subject to the ordinary incidents of property and therefore subject to his debts."

The question to be asked in these cases is: On the decease of the *cestui que trust,* would his executor have a right

to call upon the trustees respectively to account for the arrears ? If he would, then the assignees are prospectively entitled to the payments in future.

In Brandon vs. Robinson, 18 Vesey, 429, the testator directed that the share of his son T. G. should be laid out in the public funds by his trustees, &c., during his life, and that the dividends, interest and produce thereof as the same became payable and due, should be paid by them from time to time into his own proper hands, or on his proper order and receipt subscribed with his own proper hand, to the intent that the same should not be assignable by way of anticipation of any unreceived payment thereof—and that upon T. G.'s decease, his said share should go to his heirs.

Eldon, L. C. "There is no doubt that property may be given to a man until he shall become bankrupt. It is equally clear, generally speaking, that if property is given to a man for his life, the donor cannot° take away the incidents to a life estate;"———"is quite different from an attempt to give him for his life with a proviso that he shall not sell or alien it. If that condition is so expressed as to amount to a limitation, neither the man nor his assignee can have it beyond the period limited." "If personal receipt is in the construction of this Court a necessary act, it is very difficult to maintain that if the bankrupt would not give a receipt during his life, it would not be assets for his debts. It clearly would be so." The reasoning of Turner, Vice-Chancellor, in Rochford vs. Hackman, 10 English L. and E. Reports, 64 et seq. See also the reasoning of the Chancellor in Hallet vs. Thompson, 5 Paige, 543.

Hulme vs. Tenant, 1 Lead. Cases, 541 and 542.

In Ames vs. Clarke, 106 Mass., 573, Wells, J., said: The annuity vested absolutely in Clarke. As a vested right it was assignable without words expressly making it so in the terms of the bequest.

In Palmer et al. vs. Stevens et al., 15 Gray, 343, the Court

F. H. Harris, assignee, *v.* A. F. Judd, administrator estate R. W. Holt.

held under a similar devise, the devisee's right to the income annually was complete and absolute, and as much subject to his disposal as any other interest in property.

In Perkins *vs.* Hays, 3 Gray, 409, the Court said: The testator intended this sum of $6000 for the use and support of his wife during her life, *and of his children* during their minority, and the assignment was declared void.

Has Owen J. Holt assigned, by the terms of the deed quoted, his interest in the income from his father's estate? is the third and last question.

Deeds of assignment of *all property* "in the schedule annexed mentioned," convey only such property as is mentioned in the schedule. Burrill on Assignments, page 266, *et seq.*

But if there is nothing in the instrument, or schedules annexed to it, to limit or qualify its operation, a general assignment by a debtor of all his estate and effects will pass to the assignee everything which is in its nature assignable. *Ib.*, p. 354.

An assignment of all the debtor's estate and effects will pass the interest of the debtor as a devisee of property, even though the property may have been devised in trust, to be conveyed to the debtor for his own proper use and without being liable for his debts. *Ib.*, p. 356; Hallet *vs.* Thompson, 5 Paige, 583; 2 Comstock, 397.

No statute controls these doctrines here, and I must therefore hold that the assignment of Owen J. Holt to F. H. Harris conveys the said Holt's interest in the income from his father's estate.

C. C. Harris, for the assignee.

A. F. Judd and S. H. Phillips, for the administrator.

Honolulu, March 22d, 1873.